UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

YURII PEDURIANU,

Petitioner,

v.

Case No. 26-cv-1386-pp

SHERIFF DALE J. SCHMIDT,
ACTING DIRECTOR RAYMOND HERNANDEZ,
MARKWAYNE MULLIN, TODD BLANCHE
and DAVID VENTURELLA,

Respondents.

---

**ORDER GRANTING PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1), DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

---

Petitioner Yurii Pedurianu, a citizen of Ukraine, filed a petition for *habeas corpus* under 28 U.S.C. §2241 after ICE officers detained him and placed him in mandatory detention. Dkt. No. 1 at ¶¶1, 6. At the time of his detention, the petitioner had been living and working in the United States since his entry on April 22, 2023. Id. at ¶¶32, 36. The petitioner seeks an individualized bond hearing or immediate release under 8 U.S.C. §1226(a). Dkt. No. 29.

The respondents assert that the court should require the petitioner to exhaust his remedies by going to the immigration court and seeking a bond hearing. Dkt. No. 3 at 3-5. They maintain that the petitioner is subject to mandatory detention under 8 U.S.C. §1225 because the petitioner still is

considered an "arriving alien" for purposes of the Immigration and Nationality Act (INA). Id. at 6-10. The respondents also contend that under §1226(c), they have the authority to detain the petitioner without a bond hearing because the petitioner had been arrested and charged with retail theft. Id. at 10-12.

For the reasons stated in this order, the court will grant the petition and order the respondents to afford the petitioner a bond hearing within ten days or, if the respondents cannot comply with that order, to release the petitioner under reasonable conditions of supervision.

## I. Background

The petitioner, a fifty-one-year-old citizen of Ukraine, entered the United States through Seattle, Washington on April 22, 2023. Dkt. No. 1 at ¶31. The petitioner was paroled through the Uniting for Ukraine (U4U) program, which is designed to provide a "safe, legal, and orderly pathway to support vulnerable Ukrainian citizens and their immediate family members" displaced by Russia's invasion of Ukraine. Id. at ¶¶1, 7. Upon entering the United States, the petitioner was authorized for admission until April 20, 2025 under the U4U program. Id. at ¶2. He also was given a Social Security card and employment authorization so that he could work in the United States during his parole period. See Dkt. No. 1-2 at 2, 27.

Before his admission authorization period expired, the petitioner applied for re-parole by filing Form I-131 with the United States Citizenship and Immigration Services (USCIS) agency. He also applied for Temporary Protected

Status by filing Form I-821 with the USCIS. The petitioner's applications remain pending. Id. ¶¶3-5, 7.

On July 8, 2026, the petitioner was arrested for alleged shoplifting at a Walmart store in Rib Mountain, Wisconsin. Dkt. No. 1-2 at 34. The petitioner was alleged to have stolen goods from the Walmart location during two separate incidents that occurred on July 7 and 8. See id. at 34-35. The petitioner was arrested and taken into custody on a charge of felony retail theft and transported to the Marathon County Jail. Id. at 35.

The petitioner's family members were told that "local authorities might not pursue the case but would contact ICE because they believed Petitioner lacked status." Id. at ¶51. On July 9, 2026, a warrant service officer at the Marathon County Jail served the petitioner an arrest warrant issued by ICE. Dkt. No. 4-2 at 2. On July 10, 2026, ICE officials took custody of the petitioner and transferred him to the Dodge County Jail. Id. That same day, ICE officers served the petitioner with a notice to appear for removal proceedings under §240 of the INA. Id.; see also Dkt. No. 1-2 at 41-44.

The petitioner has not been charged with a criminal violation for the alleged retail theft incident that occurred at the Walmart location in Rib Mountain. Instead, on August 18, 2026, the State filed a civil forfeiture action against the petitioner for retail theft in violation of Marathon County Ordinance §9.33. See C'nty of Marathon v. Pedurianu, Case No. 2026FO482 (available at https://wcca.wicourts.gov/). Under §9.33(3), a judge may order a violator to make restitution. A first offense for retail theft also carries a forfeiture penalty

of $5 to $500 together with the costs of prosecution.[1] See Marathon County Ordinance §25.04(1)(a). In the event of a default of payment of the forfeiture penalty and costs of prosecution, the petitioner would be subject to imprisonment for up to ninety days. Id.

## II. The Petition

The petitioner alleges that §1226(a) governs his detention because ICE took custody of him after DHS had paroled him into the United States under the U4U program and had permitted him to live and work in the United States for more than three years. Id. at ¶67. The petitioner alleges that he is entitled to receive a bond hearing with an individualized custody determination based on his risk of flight or dangerousness. See id. at ¶¶93-94. He argues that §1226(c)(1)(E) does not apply to him because he has not been charged with or convicted of shoplifting and Wisconsin authorities have "affirmatively declined to institute a criminal case." Id. at ¶69. He asserts that §1226(c) does not apply to him because he is not under a present state of arrest now that State authorities have confirmed that they will not charge him with the crime of shoplifting. See id. at ¶¶70, 137-151. The petitioner also alleges that his continued detention violates his Fifth Amendment due process rights. Id. at ¶¶105-110. And the petitioner contends that his detention violates 5 U.S.C. §706(2)(A) of the Administrative Procedure Act. Id. at ¶¶113-116.

The petitioner asks the court to issue a writ of *habeas corpus* requiring the respondents to immediately release him or to afford him a bond hearing. Id.

---

[1] The petitioner does not have any criminal history. See Dkt. No. 4-2 at 2.

at 29. He asks the court to enjoin the respondents from moving him outside the jurisdiction, declare that his detention violates the Due Process Clause of the Fifth Amendment and award him costs and fees under 28 U.S.C. §2412. Id.

A. Jurisdiction

A federal court may issue a writ of *habeas corpus* when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). A petitioner may file a petition under §2241 to challenge detention orders in immigration proceedings. Zadvydas v. Davis, 533 U.S. 678, 688 (2001).

This court agrees with the other judges in this district who have decided that federal district courts have jurisdiction to consider such petitions in immigration proceedings if "the petitioner is not asking the court to review a removal order, the decision to initially detain him or seek his removal, or any part of the process by which his eligibility for removal will be determined." Ramirez Valverde v. Olson, Case No. 25-cv-1502, 2025 WL 3022700, at *1 (E.D. Wis. Oct. 29, 2025), appeal filed December 23, 2025 (citing Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)). "Title 8, United States Code, Sections 1252(a)(2)(B)(ii), (b)(9), and (g), do not deprive a federal district court of jurisdiction to consider challenges to a person's detention pending removal." Id. (citing H.G.V.U. v. Smith, No. 25 CV 10931, 2025 2025 WL 2962610, at *2-3 (N.D. Ill. Oct. 20, 2025)). See also Cirrus Rojas v. Olson, Case No. 25-cv-1437, 2025 WL 3033967, at *3-4 (E.D. Wis. Oct. 30, 2025) (Judge Ludwig), rev'd 2026 WL 2198315 (7th Cir. July 30, 2026); Lopez De La Cruz v. Schmidt, Case

No. 25-cv-1562, 2025 WL 5095296, at *2-3 (E.D. Wis. Nov. 19, 2025) (Judge Adelman); Ugarte-Arenas v. Olson, Case No. 25-C-1721, 2025 WL 3514451, at *3 (E.D. Wis. Dec. 8, 2025), appeal filed January 7, 2026 (Judge Griesbach).

The petitioner is not challenging an immigration judge's removal order, ICE's decision to detain him or to seek his removal or the process by which his eligibility for removal will be determined. The petition challenges only the petitioner's continued confinement at the Dodge County Jail without a bond hearing. Given the limited relief sought, the court concludes that it has jurisdiction to consider the petition.

B. The Respondents' Arguments (Dkt. No. 3)

After this court issued an order to show cause, dkt. no. 2, the respondents filed their response to the petition on August 24, 2026, dkt. no. 3. The respondents argue that the petitioner first should exhaust his administrative remedies to obtain the relief he seeks. Id. at 3. The respondents acknowledge that there is no statutory administrative exhaustion requirement for a §2241 *habeas* case and that requiring the petitioner to exhaust his administrative remedies is within the court's discretion. Id. at 4 (citing Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004)). They argue that the petitioner should be required to exhaust administrative remedies first by moving the immigration court for a bond hearing, which, according to the respondents, he has not done. See id. at 4-5. The respondents maintain that the immigration court is best suited to determining whether the petitioner is a criminal alien subject to mandatory detention under 8 U.S.C. §1226(c). Id. at 5.

The respondents argue that if the court declines to require the petitioner to exhaust, there are several other statutory provisions that mandate the petitioner's continued detention. First, they contend that the Seventh Circuit's recent decision in Cirrus Rojas v. Olson, 183 F.4th 909 (7th Cir. 2026), is not controlling under the facts of this case. The respondents assert that this case is distinguishable from Cirrus Rojas because in this case, the petitioner entered the United States and was granted parole under the U4U program as a humanitarian alternative to detention. The respondents point out that under 8 U.S.C. §1182(d)(5)(A), the grant of parole to an alien "shall not be regarded as an admission . . . ." Dkt. No. 3 at 6. According to the respondents, this means that the petitioner still meets the statutory definition of an "arriving alien" and that he must be detained under §1225(b). Id. at 6-7. The respondents also point to 8 C.F.R. §1001.1(q), which provides that an "arriving alien remains an arriving alien even if paroled pursuant to [§1182(d)(5)] of the Act, even after such parole is terminated or revoked." Dkt. No. 3 at 7; see also id. at 7-8 (citing 8 C.F.R. §1003.19(h)(2)(i)(B), which provides that "an immigration judge may not determine conditions of custody imposed by [DHS] with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to [§1182(d)(5)])").

The respondents argue that the petitioner's parole status distinguishes this case from Cirrus Rojas. They say that the petitioner had presented himself for inspection at a port of entry and was undoubtedly an "applicant for admission" who was "seeking admission" at that time. Id. at 6-7. They contrast

the instant facts with those in Cirras Rojas, where the petitioner had entered the United States without inspection and was not "seeking admission" when he was detained years later by immigration officials. The respondents argue that when the petitioner's parole period expired, his status reverted to an "applicant for admission" making him subject to mandatory detention under §1225(b). Id. at 8-9.

The respondents say that recent district court decisions in Kolisnyk v. Olson, Case No. 26 CV 8975, 2026 WL 2279969 (N.D. Ill. Aug. 7, 2026), and Estebezov v. Olson, Case No. 26-cv-1165, 2026 WL 1229622 (N.D. Ill. May 5, 2026), support their position that the petitioner is subject to §1225(b) because of his expired parole status. Dkt. No. 3 at 9. They recount that the petitioners in Kolisnyk and Estebezov both were paroled into the United States and that their parole status had expired. Both Kolisnyk and Estebezov held that the petitioners were subject to mandatory detention under §1225(b) because they were considered an "arriving alien" and were to be "dealt with in the same manner as that of any other applicant for admission." See Kolisnyk, 2026 WL 2279969, at *3; Estebezov, 2026 WL 1229622, at *2. But the respondents acknowledge that a judge in this district decided a similar issue differently, holding that §1226(a) governed detention of aliens whose parole status had expired. See Dkt. No. 3 at 9-10 (citing Chirinos v. Mullin, Case No. 26-cv-369, 2026 WL 905416, at *2 (E.D. Wis. Mar. 30, 2026) (Judge Adelman)).

The respondents also argue that the petitioner has suffered no due process violation. They assert that the petitioner is considered an "arriving

alien" and consequently that he is not entitled to the full array of due process rights afforded to other persons within the United States. Dkt. No. 3 at 12-13. The respondents say that the petitioner has been detained less than fifty days and that his removal proceeding is progressing in a timely manner. They recount that the petitioner was scheduled to appear before an immigration judge on August 31, 2026. Id. at 14; Dkt. No. 4-3 at 1. The respondents assert that the petitioner cannot establish a due process violation under these circumstances.

Addressing the petitioner's alleged violation of the APA, the respondents assert that such a claim is not cognizable in a *habeas* review. Dkt. No. 3 at 15 (citing Games v. Guthrie, Case No. 26-cv-836, 2026 WL 1295877, at *4 (M.D. Fla. May 12, 2026); Fleurimond v. Noem, No. CV-26-00037, 2026 WL 507542, at *3 (D. Ariz. February 24, 2026)).

C. Analysis

Petitioners in this district and across the country have been filing petitions under 28 U.S.C. §2241, asking courts to consider the two statutes that govern the detention and removal of noncitizens: 8 U.S.C. §§1225 and 1226. Most of these petitions ask the court to decide whether the petitioner is eligible for release on bond while removal proceedings are pending. Section 1226 provides for the discretionary release of noncitizens on bond; §1225 requires detention with no opportunity for release on bond. In the three decades prior to 2025, this petitioner—a noncitizen who'd been living in the country for four years—would have been entitled to a bond hearing under

§1226. In 2025, however, the Department of Homeland Security implemented a new policy amounting to a conclusion that prior administrations, the agency and the courts had been misinterpreting the language of §1226 for those three decades. The agency now treats everyone who has entered the United States illegally as an applicant for admission under §1225(a)(1), regardless of how long that person has been present in the United States or how far they are found from the border. The Board of Immigration Appeals gave force to that policy by holding that immigration judges lacked the authority to consider requests to release on bond persons who entered the country without inspection. Matter of Yajure-Hurtado, 29 I. & N. Dec. 216 (BIA 2025) at 229.

As of July 30, 2026, the Seventh Circuit joined the majority of circuits holding that noncitizens present in the country without admission and not "seeking admission" fall under §1226, not §1225(b)(2)(A). Cirrus Rojas, 183 F.4th at 915, 931. In Cirrus Rojas, the Seventh Circuit ruled that such individuals are eligible for bond hearings subject to the INA's other requirements. Id.

The court does not find persuasive the respondents' argument that the petitioner's expired parole status makes his case distinguishable from Cirrus Rojas. The respondents' argument regarding the application of §1182(d)(5)(A) has been characterized as the "entry fiction" theory. See Salgado v. Francis, No. 25-CV-6524, 2026 WL 915304, at *6 (S.D.N.Y. Apr. 3, 2026). The respondents' "entry fiction" theory is not supported by Cirrus Rojas's holding.

Cirrus Rojas explained that §1226(a) "applies equally to all 'aliens'—both 'inadmissible' and 'deportable'—who may be 'removed.'" 183 F.4th at 925. The respondents' argument that the expiration of the petitioner's parole status made him an "arriving alien"—returning him to the same status as if he were at the border or port of entry—rests on a legal fiction that does not square with the reality of the petitioner's circumstance. Cirrus Rojas addressed the legal fictions created by §1225:

> [W]hether Section 1225(a)(1)'s deeming clause defines "applicant for admission" exclusively or non-exclusively is irrelevant. A local code could deem bicycles, among other unspecified vehicles, to be "motorized vehicles" for purposes of a ban on such vehicles in public parks. It does not follow that bicycles are deemed to have motors for purposes of emissions-testing requirements. The question, in other words, is whether Section 1225(a)(1)'s acknowledged legal fiction "behave[s] in the way" DHS posits by imposing the real-world consequences of "applicant" on those who are "deemed" to fall within that category. *Santillan Quiroz [v. Mullin]*, 180 F.4th [1226,] at 1243–44 [(10th Cir. 2026)].

Cirrus Rojas, 183 F.4th at 922.

Here, the petitioner may be deemed to be an "arriving alien" under 8 C.F.R. §1001.1(q), but this does not mean that the petitioner now is an "applicant for admission" who is "seeking admission" at a port of entry for purposes of §1225(b)(2)(A). The petitioner entered the United States in April 2023 and was granted humanitarian parole. His parole expired in April 2025. The petitioner continued to live and work in the United States until his detention by ICE authorities in July 2026. The petitioner was not anywhere near the border or a port of entry when ICE detained him. The petitioner's real-world circumstance does not square with the legal fiction that he was an

"arriving alien" at the border or port of entry who was "seeking admission" for purposes of §1225(b)(2)(A).

The court also finds persuasive Judge Adelman's analysis in Chirinos, which aligns with Cirrus Rojas' holding. In Chirinos, the petitioner had been paroled into the United States. Chirinos, 2026 WL 905416 at *1. Like the petitioner in this case, the Chirinos petitioner's humanitarian parole status had expired and he was detained by ICE more than a year after the expiration of his parole. Id. The court observed that the respondent's entry fiction was not predicated on the statutory text of §1182(d)(5)(A). Instead, the "arriving alien" entry fiction was based on an agency regulation promulgated under 8 C.F.R. §1001.1(q). Id. at *3. Agency regulations are considered for their persuasive value and Judge Adelman found that the respondent's entry fiction theory was not supported by the statutory language. See id. (explaining §1182(d)(5)(A) provided that a noncitizen would "be returned to the custody from which he was paroled" and "be dealt with in the same manner as that of any other applicant for admission"). Judge Adelman concluded that §1182(d)(5)(A)'s requirement that an alien be treated "in the same manner as that of any other applicant for admission" meant that a noncitizen whose parole status had expired and who is "arrested far away from the border should be given the default treatment for noncitizens detained inside the county--§1226(a)." Chirinos, 2026 WL 905416 at *3.

The respondent's reliance on Kolisnyk and Estebezov—both of which concluded that §1225(b) applied to an alien whose parole expired, see Kolisnyk,

2026 WL 2279969, at *2-3, and Estebezov, 2026 WL 1229622, at *2—is not compelling and the court does not find either case persuasive. Estebesov predated the Seventh Circuit's Cirrus Rojas decision and Kolisnyk did not consider Cirrus Rojas in its analysis. And the petitioners in Kolisnyk and Estebesov both were proceeding without representation. Other courts facing the same "entry fiction" theory for expired parolees have rejected it and this court rejects it as well. See, *e.g.*, Bernal Morales v. Joyce, Case No. 26 Civ. 6723, 2026 WL 2445050, at *5 (S.D.N.Y. Aug. 20, 2026) (holding that §1225(b)(2)(A) "does not authorize a paroled noncitizen's confinement after the expiration of his parole, and that the arrest of noncitizens under these circumstances is instead governed by § 1226(a)"); Simms v. Arteta, Case No. 26 Civ. 5712, 2026 WL 2076009, at *3 (S.D.N.Y. July 17, 2026) (rejecting the "entry fiction" theory in which the alien is treated "as though he were again standing at the border seeking admission, regardless of the amount of time he has resided in the country."); Salgado v. Francis, Case No. 25 Civ. 6524, 2026 WL 915304, at *6 (S.D.N.Y. Apr. 3, 2026) ("Hundreds of district court[] decisions have rejected the 'entry fiction' narrative that the Government peddles here.").

The court finds that §1225(b)(2)(A) applies to those noncitizens who are applicants for admission and seeking admission at the border or port of entry, and that §1226 applies to those noncitizens arrested in the interior of the country, including aliens whose parole status has expired. Because the

petitioner was arrested years after his entry to this country and many miles from the border, he falls under the ambit of 8 U.S.C. §1226.

The court recognizes that the circuits that have decided this question of statutory interpretation have split 6-2, with the majority rejecting the government's interpretation. Compare Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026); Cirrus Rojas, 2026 WL 2198315, at *15 (7th Cir. 2026); Rodriguez Vazquez, No. 25-6842, 2026 WL 2196424, *26 (9th Cir. July 30, 2026); Santillan Quiroz, 180 F.4th 1226; Hernandez Alvarez v. Warden, 175 F.4th 1258, 1276 (11th Cir. 2026) with Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). But this court is bound to follow the Seventh Circuit (and before the Cirrus Rojas decision, had decided the issue the way most circuit courts had done).

The respondents have asked the court to require the petitioner to exhaust his administrative remedies and file a request with the immigration court for a bond hearing. Judicial discretion governs whether this court should require exhaustion because there is no statutory exhaustion requirement. Gonzalez, 355 F.3d at 1016. The court finds that requiring the petitioner to return to the immigration court to file for the same relief that this court can grant would cause unreasonable delay. The petitioner has been detained by ICE since July 10, 2026 under circumstances that violate federal law, which is why the court will not require exhaustion. See id. (holding that individual interests demand that exhaustion be excused when "requiring exhaustion of

administrative remedies causes prejudice, due to unreasonable delay . . . ."). But before the court can order that the respondents give the petitioner an individualized bond hearing, the court first must address the applicability of §1226(c) to the petitioner.

Section 1226(c) requires the detention of persons "who fall[ ] into one of the enumerated categories involving criminal offenses and terrorist activities." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018); 8 U.S.C. §1226(c)(1)(E)(i)-(ii). These individuals are not entitled to a bond hearing and may be released under very limited circumstances. 8 U.S.C. §1226(c)(4).

Under §1226(c)(1)(E), DHS must detain any alien who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." For purposes of §1226(c)(1)(E), "theft" and "shoplifting" have the same meanings given such terms "in the jurisdiction in which the acts occurred." Id. §1226(c)(2). In Wisconsin, retail theft in violation of Wis. Stat. §943.50(1m) occurs when a person "[i]ntentionally takes and carries away merchandise held for resale by a merchant or property of a merchant" "without the merchant's consent and with intent to deprive the merchant permanently of possession or the full purchase price of the merchandise property." Violation of §943.50 is a Class I felony if the value of the merchandise exceeds $500 but does not exceed $5,000. See id. §943.50(4)(bf).

The record shows that the petitioner was arrested for an alleged violation of §943.50. On July 7, the petitioner walked out of a Walmart store with a cart containing about $2,056 worth of merchandise. Dkt. No. 1-2 at 36-37. The July 8 incident at the same Walmart involved about $1,319 worth of merchandise. See id.; Dkt. No. 1 at ¶49.

Under §1226(c), DHS officials were obligated to take the petitioner into custody at the time of his arrest. Now that the petitioner no longer is under arrest and is in ICE custody, the issue is whether §1226(c) requires that the petitioner *remain* in ICE custody without the possibility of a bond. According to the respondents, the petitioner is subject to mandatory detention for the duration of his removal proceedings after he was taken into custody following his arrest for theft. And the respondents argue that the petitioner is not entitled to a bond hearing because he was taken into custody under §1226(c).

The respondents' argument isn't supported by the statutory text. In Helbrum v. Williams, *et al.*, Case No. 25-cv-00349, 2025 WL 2840273 (S.D. Iowa Sept. 30, 2025), the district court was confronted with a similar set of facts and its analysis of §1226(c)'s text is instructive. There, the petitioner was arrested at a Walmart for leaving the store without paying for all the items in his shopping cart. The petitioner denied stealing anything. Id. at 1. The petitioner was charged with theft in Iowa state court. Id. State authorities later moved to dismiss the theft charge with prejudice and the court granted the State's motion. Id. While the theft charge was pending, ICE officials took the petitioner into custody. Id. In the petitioner's removal proceeding, the

immigration judge concluded that the petitioner remained subject to mandatory detention based on §1226(c)(1)(E). Id. at *1-2.

The district court disagreed, concluding that §1226(c) did not require the petitioner to remain in ICE custody without possibility of a bond after state authorities dismissed the theft charge. The court explained its analysis of the statutory text:

> [Section 1226(c)] requires detention of a person who "is charged with" one of the enumerated offenses, including theft. The use of the present tense is conspicuous and important. *See Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025) (" '[T]o ascertain a statute's temporal reach,' this Court has 'frequently looked to Congress' choice of verb tense." (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010)). Under common usage of the English language, if criminal charges against someone have been dropped, we would not continue to say the person "is charged with" that crime, present tense. By using the present tense, § 1226(c)(1)(E)(ii) establishes that detention is mandatory only so long as the charges either remain pending or are resolved in a way that triggers one of the other clauses of the statute. *See Stanley*, 145 S. Ct. at 2064 (rejecting interpretation of statute that failed to attach significance to Congress's use of the present tense).
>
> [. . .]
>
> The plain-language interpretation of § 1226(c)(1)(E)(ii) is reinforced by the surrounding language in other ways, too. In relevant part, § 1226(c)(1)(E)(ii) makes detention mandatory in five scenarios involving enumerated offenses: (1) "is charged with," (2) "is arrested for", (3) "is convicted of," (4) "admits having committed, and (5) "admits committing acts which constitute the essential elements of." These categories track the progression of a criminal case. Criminal cases start either with the filing of charges ("is charged with") or the arrest of a person ("is arrested for") pending the filing of such charges. Either way, section 1226(c)(1)(E)(ii) compels the Attorney General to take the person into custody. At some point, however, all charges are resolved, including, in many instances, through a conviction. Because a person who "is convicted of" a crime no longer "is charged with" that crime, the words "is convicted of" establish that detention remains mandatory following conviction.

Id. at *5-6. The district court also observed that under §1226(c)(4), when the petitioner no longer is "an alien described in [§1226(c)](1)" and none of the triggering provisions of §1226(c)(1)(E) apply, "the Attorney General has the discretion to release [the alien] in accordance with §1226(a) and other governing law." Id. at 6. Because the petitioner no longer was "charged with" one of §1226(c)'s enumerated offenses after the Iowa state court dismissed the theft charge, the district court concluded that the petitioner was entitled to a bond hearing under §1226(a). See id. at *7.

This court agrees with the Helbrum court's analysis of the statutory structure of §1226(c). The court then must determine whether one of §1226(c)'s triggering provisions applies, mandating the petitioner's continued detention. In this case, the petitioner no longer is under arrest for theft. He was arrested on July 8, 2026 and detained by State authorities at the Marathon County Jail. State officials promptly contacted ICE officials and ICE took the petitioner into their custody on July 10 and transferred him to the Dodge County Jail, which they were obligated to do under §1226(c) because, at that time, the petitioner fit the "is arrested for" triggering provision of §1226(c). But the "is arrested for" triggering provision no longer applies to the petitioner because the arrest is now in the past.

The respondents' argument that the petitioner is subject to mandatory detention under §1226(c) because he has been charged with a municipal ordinance violation doesn't hold water. Section 1226(c)'s title is "[d]etention of *criminal* aliens." 8 U.S.C. §1226(c) (emphasis added). The petitioner hasn't been

charged with a criminal offense. State authorities have filed a *civil* action against the petitioner for a municipal ordinance violation. See Wis. Stat. §800.02(1) ("An action in municipal court for violation of a municipal ordinance is a civil action . . . ."). The petitioner has not been charged with any crime for the retail theft incident, so §1226(c)'s "is charged with" triggering provision doesn't apply. A civil action for a municipal ordinance violation is not sufficient to trigger 1226(c)'s "is charged with" provision.

Section 1226(c)'s other triggering provisions—"is convicted of," "admits having committed" or "admits committing acts"—do not apply either. The petitioner hasn't been convicted of any crime. There is no indication in the record that the petitioner admitted to committing a retail theft, as defined under Wis. Stat. §943.50(1m). The petitioner told police that he didn't realize he hadn't paid for the goods he took from Walmart, suggesting that he did so unintentionally. Dkt. No. 1-2 at 34-35. The petitioner's family also told the police that the petitioner "has memory issues" and that when he "goes to check out he thinks that he already paid, and he walks out." Id. None of this constitutes an admission of guilt.

Based on the facts of this case, the court finds that the petitioner is not "an alien described in [§1226(c)](1)" and is not subject to mandatory detention under §1226(c). The petitioner's continued detention without the possibility of an individualized bond hearing under §1226(a) violates federal law.[2]

---

[2] Because the court will grant the petitioner's *habeas* petition, the court need not address the petitioner's allegation that his detention violates the APA. The petitioner's APA claim is not appropriate in a *habeas* review and the court

In his request for relief, the petitioner requested fees under 28 U.S.C. §2412, but has not filed an application as required under the Equal Access to Justice Act. 28 U.S.C. §2412(d)(1)(B). The petitioner would be entitled to fees only if the (1) government's litigation position was not substantially justified; (2) no special circumstances make an award unjust; and (3) the request is timely filed. 28 U.S.C. §2412(d)(1)(A), (B); Cunningham v. Barnhart, 440 F.3d 862, 863 (7th Cir. 2006). Given the circuit split on this issue, it is difficult to argue that the government's position was not substantially justified. See Herrera v. Olson, Case No. 25-cv-1994, 2026 WL 1602258, at *2 (E.D. Wis. June 4, 2026) (finding the division within this district and across the country supports a finding that the government's position was substantially justified).

## III. Conclusion

The court **GRANTS** the petition for a writ of *habeas corpus*, filed under 28 U.S.C. §2241, dkt. no. 1, under the following conditions:

The court **ORDERS** that within ten days of the date of this order, the respondents must (1) afford the petitioner a bond hearing before an immigration judge under 8 U.S.C. §1226(a); or (2) if the respondents cannot otherwise comply with the court's order, release the petitioner from custody under reasonable conditions of supervision.

The court **DENIES** the petitioner's request for attorneys' fees. Dkt. No. 1 at 29.

---

would not have addressed it in any event. See Richmond v. Scibana, 387 F.3d 602, 606 (7th Cir. 2004) (stating that 28 U.S.C. §2241 is not the "appropriate means to contest" and administrative agency decision).

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 11th day of September, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**